UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICHARD BORRELLI,                        :
                                         :
        Plaintiff,                       :
                                         :
v.                                       :     CASE NO. 3:15CV1857(DFM)
                                         :
BRIAN MCDERMOTT,                         :
                                         :
        Defendant.                       :

MEMORANDUM OF DECISION

Plaintiff, Richard Borrelli, commenced this action pursuant
to 42 U.S.C. § 1983 alleging that defendant Brian McDermott, a
New Haven police officer acting under the color of state law,
violated plaintiff's Fourth Amendment right not to be subjected
to unreasonable force during the course of his arrest on
February 4, 2013.  After a bench trial on February 10, 2017, I
make the following findings of fact and conclusions of law
pursuant to Rule 52 of the Federal Rules of Civil Procedure.

I.   Findings of Fact

In their joint trial memorandum, the parties stipulated to
the following facts. (Doc. #31, p. 3.)

1.   At all relevant times, defendant was a police officer
employed by the New Haven Department of Police Service, and
was acting within the scope of his employment.

2.   At all relevant times, defendant was acting under the
color of state law.

3.    On February 4, 2013, defendant arrested plaintiff in
Apartment 2B of premises located at 103 Grand Avenue in New
Haven, Connecticut.


Based on the credible testimony, the exhibits, and the
record as a whole, I find the following facts.

4.    On February 4, 2013, plaintiff resided with his wife
and son at 103 Grand Avenue, Apartment 2B, New Haven,
Connecticut.

5.    Plaintiff got out of work at 6:00 PM on February 4,
2013.  Before going home, he and some coworkers lingered in
the parking lot and drank alcoholic beverages.

6.    Plaintiff drove home and had dinner with his wife and
son.

7.    After dinner, plaintiff's son went to his bedroom,
while plaintiff and his wife went to their bedroom to watch
television.

8.    Some time later, plaintiff and his wife had a loud
argument, during which plaintiff's wife threw a glass,
which broke on the kitchen floor.

9.    Shortly after 11:00 PM, defendant and another New
Haven police officer, Rosa Melendez, were dispatched to
investigate a reported domestic disturbance at plaintiff's
home.

10.  When the officers arrived at the building, they could hear screaming, yelling, and what sounded like objects crashing to the floor.

11.  The common door to the multi-unit building was locked. Defendant and Officer Melendez knocked on a first floor window and someone let them inside.

12.  As the officers went up the stairs to the second floor, they could still hear yelling and screaming.

13.  The door to plaintiff's apartment was partially open.

14.  Officer Melendez knocked on the door and announced their presence.

15.  Neither plaintiff nor his wife wanted the police to go inside the apartment.

16.  Plaintiff told the officers that everything was under control and that he and his wife did not need the officers' help.

17.  Plaintiff's wife said that there was no reason for the officers to be there.

18.  Defendant told plaintiff that he had been sent to the apartment because there was a report of a domestic disturbance and that he had an obligation to conduct an investigation to make sure everyone in the apartment was safe.

19.  As plaintiff and his wife attempted leave the
apartment, plaintiff tried to shut the apartment door
behind him, but defendant used his foot to prevent the door
from closing.

20.  Defendant entered the apartment and plaintiff followed
immediately behind him.

21.  Plaintiff's wife and Officer Melendez remained in the
hallway outside the apartment.

22.  The apartment door opened into the kitchen; there were
no walls separating the kitchen and living room.

23.  Defendant saw large kitchen knives out on the counter,
a knife sticking out of the floor, and broken glass on the
floor.

24.  Out of concern for his safety, defendant positioned
himself between the knives and plaintiff, and ordered
plaintiff to show his hands.

25.  Plaintiff was wearing a winter coat and had his hands
in his coat pockets.

26.  Plaintiff initially complied by showing defendant his
hands, but then returned them to his coat pockets.

27.  Defendant instructed plaintiff to keep his hands out
of his pockets and explained that he needed to conduct a
pat down for weapons.

28.   Plaintiff responded by tugging at his coat pockets, saying those were the only pockets that defendant could check.

29.   Defendant stepped toward plaintiff.

30.   Plaintiff stepped into the living room and took off his coat.

31.   Defendant backed up to create space between them and told plaintiff that the incident still was minor, but that he was making things more difficult than they needed to be.

32.   Plaintiff responded, "we're going to do this the hard way."  He assumed a fighting stance by spreading his legs and putting up his hands as a boxer might, and lunged at defendant.  The incident quickly escalated.

33.   Defendant stood his ground and punched plaintiff in his left eye.

34.   Plaintiff staggered backward, momentarily dazed.

35.   Within a matter of seconds, defendant used pepper spray on plaintiff's eyes in an effort to limit his vision and make it more difficult for plaintiff to gain access to weapons.

36.   Defendant approached plaintiff and attempted to handcuff him, but plaintiff swung his arms and would not cooperate.

37.   Defendant tackled plaintiff to the floor and the two men struggled.

38.   Plaintiff was face down on the floor where there was broken glass.  Defendant was on top of him, attempting to subdue him and gain control of the situation for the safety of all involved.

39.   Plaintiff tucked his arms under his body and tensed his muscles, refusing to produce his hands.

40.   Fearing that plaintiff might have a weapon, defendant used his baton to pry plaintiff's left arm out from under his body.

41.   As defendant freed plaintiff's left arm, plaintiff rolled his weight onto his right arm.

42.   By this time, Officer Melendez had handcuffed plaintiff's wife and entered the apartment to help defendant with the plaintiff.

43.   In need of additional assistance, Officer Melendez called for backup.

44.   New Haven Police Officer Jeremy Cordero arrived within a short time.

45.   With Officer Cordero's assistance, plaintiff was handcuffed.

46.   Plaintiff was brought to his feet and escorted outside.

47.   A prisoner conveyance van and an ambulance were called to the scene.

48.   Plaintiff was uncooperative with ambulance personnel and refused treatment.

49.   Plaintiff was transported by prisoner conveyance van to the detention center at One Union Avenue in New Haven and then transported by ambulance to Yale New Haven Hospital, where he was treated for injuries to his face, eye, ear, arm, and collarbone.

50.   Plaintiff's hospital records reveal that he has a history of alcohol abuse, had consumed a pint of vodka that afternoon, and was verbally assaultive to hospital staff.

II.   Conclusions of Law

1.   Federal question jurisdiction is conferred pursuant to 28 U.S.C. § 1331.

2.   Plaintiff's claim arises under 42 U.S.C. § 1983, which states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

3.   In order to establish a claim under § 1983, plaintiff must demonstrate the following three elements by a

preponderance of the evidence: (1) defendant acted under

color of state law; (2) defendant deprived plaintiff of his

constitutional rights; and (3) defendant's acts were the

proximate or legal cause of plaintiff's injuries.  West v.

Atkins, 487 U.S. 42, 48 (1988).

4.   Defendant was acting under color of state law on

February 4, 2013, and his acts were the proximate cause of

plaintiff's injuries.

5.   Claims that a law enforcement officer used excessive

force in the course of an arrest, investigatory stop, or

other "seizure" of a free citizen is analyzed under the

Fourth Amendment's "reasonableness" standard.  Graham v.

Connor, 490 U.S. 386, 395 (1989).

6.   Determining whether the force used was reasonable

"requires a careful balancing of the nature and quality of

the intrusion on the individual's Fourth Amendment

interests against the countervailing governmental interests

at stake."  Graham at 396.

7.   The assessment requires careful attention to the facts

and circumstances of each particular case, including the

severity of the crime at issue, whether the suspect posed

an immediate threat to the safety of the officer or others,

and whether he was actively resisting arrest or attempting

to evade arrest by flight.  Id.

8.    Reasonableness is judged "from the perspective of a
reasonable officer on the scene, rather than with the 20/20
vision of hindsight."  Id.

9.    "Not every push or shove, even if it may later seem
unnecessary in the peace of a judge's chambers, violates
the Fourth Amendment.  The calculus of reasonableness must
embody allowance for the facts that police officers are
often forced to make split-second judgments in
circumstances that are tense, uncertain and rapidly
evolving about the amount of force that is necessary in a
particular situation."  Id. at 396-97.

10.  Plaintiff has failed to prove by a preponderance of
the evidence that defendant's use of force rose to the
level of a constitutional violation.

11.  Under the circumstances, defendant applied a
reasonable amount of force which was necessary to subdue
plaintiff and effect his arrest.

12.  In light of this conclusion, the court need not
address defendant's qualified immunity defense.  See, e.g.,
Nelson v. City of Stamford, No. 3:09-CV-1690(VLB), 2012 WL
233994, at *28 (D. Conn. Jan. 25, 2012) ("Having found that
no constitutional violation occurred, the Court need not
address the Defendants' claims of qualified immunity.");
Morris v. Valeriano, No. 3:06-CV-392(JCH), 2007 WL 1851167,

9

at *6 (D. Conn. June 26, 2007) (finding no constitutional

violation, district court "need not address the defendants'

qualified immunity defense.").

III. <u>Conclusion</u>

Judgment shall enter in favor of defendant.  This is not a

recommended ruling.  The parties have consented to trial before

a magistrate judge pursuant to 28 U.S.C. § 636(c) and

Fed.R.Civ.P. 73. (Doc. #25.)

SO ORDERED at Hartford, Connecticut this 16th day of

February, 2017.

_____/s/_____
Donna F. Martinez
United States Magistrate Judge

10